**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ JUL 1 9 2005 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------X

ALICIA NICHOLLS,

                   Plaintiff,

             -against-

THE BROOKDALE UNIVERSITY
HOSPITAL AND MEDICAL CENTER,
SERVICE EMPLOYEES INTERNATIONAL
UNION LOCAL 1199 AFL-CIO; AMERICAN
ARBITRATION ASSOCIATION; and
ARBITRATOR ALAN R. VIANI,

                 Defendants.

--------------------------------------------------------X

MEMORANDUM,
JUDGMENT & ORDER
05-CV-2666

APPEARANCES:

For the Plaintiff:

Stewart Law Firm
133-40 Hook Creek Blvd.
Rosedale, New York 11422
By:    Nadira Stewart
        Charmaine Stewart

For Defendant Brookdale Hospital:

Wilson, Elser, Moskowitz, Edelman & Dicker LLP
150 East 42nd Street
New York, New York 10017
By:    Celena Mayo

For Defendant American Arbitration Association:

Theodore L. Hecht
925 Westchester Avenue, Suite 304
White Plains, NY 10604
By:    Theodore L. Hecht



For Defendant Service Employees International Union Local 1199 AFL-CIO:

Levy Ratner, P.C.
80 Eighth Avenue
New York, NY 10011-5126
By:     Adam Rhynard

Jack B. Weinstein, Senior United States District Judge:

## I. Introduction

Having been found in an arbitration proceeding to have willfully forged a doctor's

signature on medical records, with adequate cause for the hospital to fire her, plaintiff Alicia

Nicolls moves to vacate the arbitration award issued by American Arbitration Association

("AAA") and arbitrator Alan R. Viani. The arbitration was conducted pursuant to a collective

bargaining agreement between Brookdale Hospital and defendant Service Employees

International Union SEIU, Local 1199, AFL-CIO. Plaintiff was represented by the union in the

grievance and arbitration process. The complaint is dismissed against all defendants.

## II. Claims

Plaintiff asserts several claims against the multiple defendants. First, she alleges that the

union breached a duty to plaintiff "by denying plaintiff the right to [other non-union

representation] in contravention of the [collective bargaining] AGREEMENT, by failing to

prepare the case or call pertinent witnesses and by failing to forward her the arbitrator's Opinion

and Award dated January 30, 2005 for more than 30 days after issuance." Compl. ¶ 47. She

makes this claim under section 301 of the Labor Management Relations Act ("the LMRA"), 29

U.S.C. § 185. Second, plaintiff alleges that Brookdale, her employer, "violated [section 301 of

the Labor Management Relations Act, 29 U.S.C. § 185] by breaching the collective bargaining

agreement between it and [the union] when it suspended and terminated plaintiff without just cause." Compl. ¶ 50. Together these two claims constitute what is known as a hybrid section 301-fair representation claim and are thus mutually dependent, as discussed *infra*. Third, plaintiff alleges a separate and distinct claim that defendants AAA and Viani, the arbitrator, violated plaintiff's right to "a neutral arbitration in a fair manner" by "denying plaintiff the right to have her attorneys present while defendants UNION and BROOKDALE had their counsels [sic] present, by ignoring and or misstating testimonies [sic] that would support plaintiff's claim and by failing to preserve the record." Compl. at ¶¶ 53, 54. (caps in original). Plaintiff argues that through these actions the arbitrator "engaged in misconduct and/or partiality and exceeded his power." Compl. ¶55. She also asserts that he exhibited "manifest disregard" for the law and that the resulting "Arbitration Award, due to the way it was procured, violates public policy." Mem. In Supt. Of Pl.'s Mot. to Vacate 8-9. For these reasons, plaintiff asserts that the arbitration award should be vacated. *See* 9 U.S.C.A. § 10; NY CPLR section 7511.

Defendants move to dismiss all claims against them on the grounds that plaintiff lacks standing, that certain claims are precluded or time-barred, and that the claims are dismissible on the merits. The plaintiff withdrew her claim against AAA. She has never served the arbitrator.

Leave to amend was granted plaintiff at the time of argument. The amendments were in the form of details of evidence that had no effect on the case's outcome. Further discovery would provide no new relevant information with which to challenge the arbitration.

In a separate action plaintiff sued the hospital for damages based on essentially the same facts adjudicated in the arbitration. The claims were dismissed. See the related cases for a more detailed analysis of the facts: *Nicholls v. Brookdale University Hosp.*, No. 03-CV-6233, 2005

3

WL 1521239 (E.D.N.Y. June 22, 2005); *Mark v. Brookdale University Hosp.*, No. 04-CV-2497, 2005 WL 1521185 (E.D.N.Y. June 22, 2005).

She was employed as a full-time physician's assistant ("P.A.") by Brookdale in the Department of Emergency Medicine for approximately nine years until she was terminated in 2002. Mem. in Supt. of Pl. Mot. To Vacate at 1. During that time, she was a member of the defendant union and served as the elected union delegate for P.A.'s at Brookdale. *Id.* at 2. Collective bargaining agreements provided that employment disputes between employees and Brookdale were to be arbitrated by the AAA. *Id.*

During plaintiff's employment, a doctor complained that, in violation of hospital regulations, the plaintiff signed his name to medical records without his permission. *Id.* at 2. At the conclusion of Brookdale's investigation of the charge, the plaintiff was fired for falsifying medical records. *Id.* She grieved the termination. *Id.* at 3. The union arbitrated her claims pursuant to the collective bargaining agreement, before defendant Alan R. Viani, an arbitrator for AAA. *Id.*

The first arbitration hearing occurred on October 3, 2003. *Id.* According to the plaintiff, it was adjourned in order for Brookdale to provide copies of two hundred charts Brookdale had reviewed during the course of its investigation. *Id.* Plaintiff contends that they never received these documents. *Id.* These documents allegedly supported the claim that other P.A.'s were also signing doctor's names and that this practice was condoned by the hospital. An arbitration was recommenced on October 7, 2004 and continued to October 15, 2004. *Id.* The arbitrator heard testimony from the plaintiff, Dr. Marshall, Dr. Looney, Ms. Lind, Dr. Epter, Dr. Niec, as well as P.A. Jean Allick, P.A. Cecil Dollison, and union organizer Timothy Whiting. *Id.* at 2-3.

4

According to the arbitrator, both parties to the arbitration were afforded a full opportunity to submit evidence, examine and cross-examine witnesses, conduct oral argument, and finally submit written closing argument. Pl. Ex. D at 1. Plaintiff complains that she was not allowed to have separate counsel, apart from her union counsel, present in the proceedings. Pl. Mem. at 3. She also complains that the hearings were not recorded or transcribed. *Id.* at 6.

On January 30, 2005, the arbitrator issued a nineteen-page opinion and arbitration award in favor of Brookdale, finding that plaintiff willfully falsified medical records and that her resulting termination was appropriate. Pl. Ex. D. He found the accusing doctor more credible than plaintiff. Pl. Ex. D at 17.

## III. Law

### A. Standard of review

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for "failure to state a claim upon which relief may be granted." Defendant has the burden of proving "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

In reviewing a Rule 12(b)(6) motion, the task of the court "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). A court will accept the plaintiff's factual allegations as true, drawing reasonable inferences in plaintiff's favor. *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996).

Materials *de hors* the complaint are generally not considered on a motion to dismiss unless the court treats it as one for summary judgment, giving all the parties a reasonable opportunity to present relevant evidence under Rule 56. *See* Fed. R. Civ. P. 12(b)(6); *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff that they may be so considered; it is for that reason–requiring notice so that the party against whom the motion to dismiss is made may respond–that Rule 12(b)(6) motions are ordinarily converted into summary judgement motions."); *see also Festa v. Local 3 Int'l Bhd. Of Elec. Workers*, 905 F.2d 35, 38 (2d Cir. 1990) (finding that a court's consideration of affidavits filed with motion to dismiss was improper without converting the motion to one for summary judgment). The purpose of this practice is to give the non-moving party proper notice, thus avoiding prejudice.

"[M]otions to dismiss for [lack of] subject matter jurisdiction under Rule 12(b)(1) are reviewed under the same standards as motions to dismiss for failure to state a claim under Rule 12(b)(6)." *Gotlin v. Lederman*, 367 F. Supp. 2d 349, 353 (E.D.N.Y. 2005) (quoting *Walker v. New York*, 345 F. Supp. 2d 283, 286 (E.D.N.Y. 2004)).

**B. Jurisdiction**

Plaintiff asserts a hybrid section 301-fair representation claim against Brookdale and the union. It is made pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, an independent basis for jurisdiction. The LMRA provides that:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district

6

court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C.A. § 185(a). Plaintiff's claims against AAA and the arbitrator are brought pursuant to section 10 of the Federal Arbitration Act, NY CPLR 7511, and "federal common law."

A motion to vacate an arbitration award under the FAA does not, by itself, confer subject matter jurisdiction on the federal district courts. *See Southland Corp. v. Keating*, 465 U.S. 1, 16 n.9 (1984); *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983); *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 25 (2d Cir. 2000). There must be "an independent basis of jurisdiction," such as diversity of citizenship or the existence of a federal question. *Harry Hoffman Printing, Inc. v. Graphic Communications, Int'l Union, Local 261*, 912 F.2d 608, 611 (2d Cir. 1990). *See also Greenberg*, 220 F.3d at 25. The Second Circuit Court of Appeals has held that a federal question, and thus federal jurisdiction, exists where the plaintiff "complains principally and in good faith that the award was rendered in manifest disregard of federal law." *Greenberg*, 220 F.3d at 27. In *Greenberg*, the court stated:

> In contrast to grounds of review that concern the arbitration process itself--such as corruption or abuse of power-- review for manifest disregard of federal law necessarily requires the reviewing court to do two things: first, determine what the federal law is, and second, determine whether the arbitrator's decision manifestly disregarded that law. This process so immerses the federal court in questions of federal law and their proper application that federal question subject matter jurisdiction is present. . . .
>     . . . Where the arbitrators' alleged manifest disregard of federal law forms a key part of the petitioner's complaint about the award, the federal questions thereby presented are substantial enough to support federal jurisdiction. . . . While federal claims may appropriately be resolved through arbitration, the federal courts have a strong interest in ensuring that arbitrators interpret and apply federal law properly, even if within a wide range of tolerance.

*Id.* The court in *Greenberg* also suggested that a federal question and thus federal jurisdiction

7

may exist where the plaintiff has a basis for contending that the enforcement of an arbitration award "would violate a well defined and dominant public policy." *Id.* (internal citations and quotation marks omitted).

A district court has the power to exercise supplemental jurisdiction pursuant to section 1367 of title 28 of the United States Code. Supplemental jurisdiction allows a court, at its discretion, to exert jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution . . . includ[ing] claims that involve the joinder or intervention of additional parties." 28 U.S.C.A. § 1367(a). *See Exxon Mobil Corp. v. Allapattah Services, Inc.*, 125 S.Ct. 2611, 2617 (2005) ("Although the district courts may not exercise jurisdiction absent a statutory basis, it is well established--in certain classes of cases--that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy.") This authority allows the court to resolve all claims between the same opposing parties or from the same nucleus of operative facts in one convenient forum.

## C. Statute of limitations

The limitations period for a hybrid section 301-fair representation suit against an employer and the union is six months. *See DelCostello v. International Broth. of Teamsters*, 462 U.S. 151 (1983); *Kavowras v. New York Times Co.*, 328 F.3d 50 (2d Cir. 2003). Time begins on the date the employee "knew or reasonably should have known that [a breach of the duty of fair representation] had occurred." *Santos v. Dist. Council of N.Y. City*, 619 F.2d 963, 969 (2d Cir. 1980). *See also Kavowras*, 328 F.3d at 55; *Clarke v. Communications Workers of Am.*, No.

8

03-CV-5912, 2004 WL 2434715 (E.D.N.Y. Nov. 1, 2004).

Section 12 of the Federal Arbitration Act states that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. "Thus, under [the FAA's] terms, a party may not raise a motion to vacate, modify, or correct an arbitration award after the three month period has run, even when raised as a defense to a motion to confirm." *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984). "An application to vacate or modify an award may be made by a party within ninety days after its delivery to him." NY CPLR 7511(a). For enforcement of arbitration awards pursuant to a collective bargaining agreement, the Second Circuit Court of Appeals "has held that CPLR 7511(a) provides the most appropriate New York state statute of limitations." *Local 802, Associated Musicians of Greater New York v. The Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998). *See also Local Union No. 38, Sheet Metal Workers' Int'l Ass'n*, 357 F.3d 266 (2d Cir. 2004); *Harry Hoffman Printing, Inc. v. Graphic Communications, Int'l Union, Local 261*, 912 F.2d 608, 612 (2d Cir. 1990).

**D. Hybrid section 301 - fair representation claim**

An employee whose claims are arbitrated under a collective bargaining agreement between an employer and a union generally does not have standing under federal law to vacate the arbitration award, since that employee was not a party to the initial contract under which the arbitration proceeded. *See Katir v. Columbia Univ.*, 15 F.3d 23, 24-25 (2d Cir. 1994). Such plaintiffs also lack standing under NY CPLR 7511. *See In re Soto*, 165 N.E.2d 855 (N.Y. 1960). This rule may leave an individual employee without recourse when a union breaches its duty of fair representation in an arbitration proceeding. The Supreme Court has therefore created a

hybrid section 301-fair representation claim in which the employee-plaintiff may have standing:

> [W]e recognized that this rule [against standing] works an unacceptable injustice
> when the union representing the employee in the grievance/arbitration procedure
> acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to
> breach its duty of fair representation. In such an instance, an employee may bring
> suit against both the employer and the union, notwithstanding the outcome or
> finality of the grievance or arbitration proceeding. Such a suit, as a formal matter,
> comprises two causes of action. The suit against the employer rests on § 301,
> since the employee is alleging a breach of the collective bargaining agreement.
> The suit against the union is one for breach of the union's duty of fair
> representation, which is implied under the scheme of the National Labor Relations
> Act. Yet the two claims are inextricably interdependent. To prevail against either
> the company or the Union, . . . [employee-plaintiffs] must not only show that their
> discharge was contrary to the contract but must also carry the burden of
> demonstrating a breach of duty by the Union.

*DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 164 (1983) (internal citations and

quotation marks omitted). In a hybrid claim, an employee may sue the union, the employer, or

both, but "must prove *both* (1) that the employer breached a collective bargaining agreement and

(2) that the union breached its duty of fair representation vis-a-vis the union members." *White v.*

*White Rose Food, a Div. of DiGiorgio Corp.*, 237 F.3d 174, 178 (2d Cir. 2001) (emphasis

added). *See also Carrion v. Enterprise Ass'n. Metal Trades Branch*, 227 F.3d 29, 33 (2d Cir.

2000).

### 1. Employer's breach of collective bargaining agreement

Article XXIX of the collective bargaining agreement provides that "[t]he Employer shall

have the right to discharge, suspend, or discipline any Employee *for cause*." Pl. Ex. B; Pl. Ex. C

(emphasis added). Whether the employer in the instant case had cause to discharge plaintiff thus

reaches the merits of the case, the very issues that were evaluated through the arbitration process

and that are discussed *infra*.

Brookdale argues that plaintiff is barred from asserting this breach of contract claim because of preclusion, sufficient cause having been already established by other litigation. Brookdale Mem. of Law 9-11. The doctrine of preclusion prevents claims from being relitigated once the parties have had a full and fair opportunity to try them. *See Montana v. United States*, 440 U.S. 147, 153 (1979). It produces a final and binding judgment that not only allows parties to depend on the decisions of the court, but also preserves the resources of the court for litigation of new and meritorious claims. *See U.S. v. Mendoza*, 464 U.S. 154, 158-159 (1984).

> Under the doctrine of res judicata [or claim preclusion], a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. Under the doctrine of collateral estoppel [or issue preclusion], on the other hand, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action.

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.5 (1979). *See also* Restatement (Second) of Judgments § 27 (1982). For a claim or issue to be precluded, there must have been a binding final judgment, based on the merits, on the same claim or issue between the same parties. *See Montana*, 440 U.S. at 153; *Mendoza*, 464 U.S. at 159 n.4.

### 2. Union's breach of its duty of fair representation

A union has a duty to provide fair representation for all employees subject to its collective bargaining agreement, a duty derived "from the union's statutory role as exclusive bargaining agent." *Tomney v. International Ctr. for Disabled*, 357 F. Supp. 2d 721, 735 (S.D.N.Y. 2005) (internal citations and quotation marks omitted). *See also Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998); *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 74 (1991). "To establish a breach of duty of fair representation [t]he union's conduct must, first, have been

arbitrary, discriminatory or in bad faith, and second, it must have seriously undermine[d] the arbitral process." *Mack v. Otis Elevator Company*, 326 F.3d 116, 129 (2d Cir. 2003) (internal citations and quotation marks omitted). *See also Barr v. United States Parcel Serv.*, 868 F.2d 36 (2d Cir. 1989).

The first element consists of three components: that the union's conduct was arbitrary, discriminatory or in bad faith. A union's actions "are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (internal citations and quotation marks omitted). To be discriminatory, a union's actions must be "invidious" or "unlawful." *Id.* at 81. Finally, to constitute bad faith, there must be "fraud, deceitful action or dishonest conduct." *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 299 (1971) (quoting *Humphrey v. Moore*, 375 U.S. 335, 348 (1964)).

A union's mere negligence or error in the grievance or arbitration process is insufficient to constitute a breach of the union's duty of fair representation. *See United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372-73 (1990) (finding that mere negligence does not state a claim of unfair representation); *Barr v. United Parcel Serv., Inc.*, 868 F.2d at 43 (finding that tactical errors in failing to present witnesses and inadequate representation by union business agent were insufficient to demonstrate bad faith or arbitrariness); *Cook v. Pan Am. World Airways, Inc.*, 771 F.2d 635, 645 (2d Cir. 1985) (finding that failure to prevail before arbitrator does not establish breach of duty of fair representation); *Caputo v. National Ass'n of Letter Carriers*, 730 F. Supp. 1221, 1230 (E.D.N.Y.1990) (finding that failure to consult with or advise a grievant of its

bargaining activities is not a breach of duty of fair representation). The enormous burden on a

plaintiff to establish that a union breached its duty of fair representation was emphasized in *Barr*:

> In hindsight, any decision a union makes in the informal yet complex process of
> handling its member's grievances may appear to the losing employee to be
> erroneous. . . .
>      . . . Tactical errors are insufficient to show a breach of the duty of fair
> representation; even negligence on the union's part does not give rise to a breach.
> [P]roof of mere negligence or errors of judgment . . . is insufficient. . . . As long
> as the union acts in good faith, the courts cannot intercede on behalf of employees
> who may be prejudiced by rationally founded decisions which operate to their
> particular disadvantage.

*Barr*, 868 F.2d at 43-44 (internal citations and quotation marks omitted).

Lack of additional non-union counsel does not support a claim of breach of the union's

duty of fair representation. *See Castelli v. Douglas Aircraft Co.*, 752 F.2d 1480, 1484 (9th Cir.

1985) (finding that federal labor law suggests disfavoring the involvement in grievance

proceedings of attorneys privately retained by union members); *Lettis v. U.S. Postal Serv.*, 39 F.

Supp. 2d 181, 198 (E.D.N.Y. 1998) (finding that grievant has no right to a private attorney, or to

require a union to utilize a lawyer, at an arbitration).

Even if a plaintiff does establish a breach of the union's duty of fair representation, it

must also show that this breach "seriously undermine[d] the arbitral process." *Mack v. Otis

Elevator Company*, 326 F.3d 116, 129 (2d Cir. 2003).

## E. *Vacatur* of an arbitration award

The standards for *vacatur* of an arbitration award under the NY CPLR are the same as

those of the FAA for the purposes of this litigation. In order to support the federal policy in favor

of arbitration expressed by the FAA, courts possess only a limited power to review arbitrations.

Substantial deference is given to arbitrators' decisions. Any lesser deference would undermine

the purpose of the FAA and arbitration in general – finally and promptly resolving disputes such

as those between an employer and employee without formal litigation. *See United Paperworkers

Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29 (1987); *Wallace v. Buttar*, 378 F.3d 182 (2d

Cir. 2004); *Duferco Intern. Steel Trading v. T. Klaveness Shipping*, 333 F.3d 383 (2d Cir. 2003);

*DiRussa v. Dean Witner Reynolds Inc.*, 121 F.3d 818, 821 (2d Cir. 1997).

A motion to vacate filed in a federal court is not an occasion for *de novo* review of an arbitral award. . . .

. . . A federal court cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law. On the contrary, the award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached.

*Wallace*, 378 F.3d at 189-190 (internal citations and quotation marks omitted). The party

seeking *vacatur* "bears the heavy burden of showing that the award falls within a very narrow set

of circumstances delineated by statute and case law." *Duferco*, 333 F.3d at 388. In short, courts

will only vacate an arbitration award on rare occasions provided for by the four statutory

provisions of section 10(a) of the Federal Arbitration Act or by the federal 'common law'

doctrine of manifest disregard for the law.

### 1. Statutory justifications for *vacatur*

The FAA provides that a contractual agreement to settle disputes by arbitration is valid,

irrevocable, and enforceable, and requires that federal district courts confirm such arbitration

awards unless there are grounds for vacating or modifying the awards under sections 10 and 11

of the Federal Arbitration Act, respectively.

Section 10(a) of the Federal Arbitration Act permits *vacatur* of an arbitral award:

(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Courts have interpreted (1), (2), and (3) to require misconduct on the part of

the arbitrator. Even assuming an error on the part of an arbitrator, it must be "in bad faith or so

gross as to amount to affirmative misconduct." *United Paperworkers*, 484 U.S. at 40. This standard is very high and is not satisfied because the court disagrees with the arbitrator's factual findings or ultimate decision. *Wallace*, 378 F.3d at 190.

In order to justify vacating an award on the grounds of bias, plaintiff must demonstrate "evident partiality" which exists "where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 84 (2d Cir.1984); *see also Lucent Techs., Inc. v. Tatung Co.*, 379 F.3d 24 (2d Cir. 2004); *Reed & Martin, Inc. v. Westinghouse Elec.*, 439 F.2d 1268, 1275 (2d Cir. 1971). A showing of "evident partiality" requires more than just the appearance of bias. *Local 814, Int'l Bhd. of Teamsters v. J & B Syst. Installers & Moving Inc.*, 878 F.2d 38, 40 (2d Cir. 1989). *See also United States v. International Bhd. of Teamsters*, 170 F.3d 136, 147 (2d Cir.1999) (requiring that a finding of evident partiality not be based simply on speculation and that an integral part of the *Morelite* reasonable person test is an assessment of the facts established by the party alleging bias). Adverse rulings by the arbitrators are insufficient to establish the evident partiality of the arbitrators. *See British Ins. Co. of Cayman v. Water Street Ins. Co.*, 93 F. Supp. 2d 506, 520 (S.D.N.Y. 2000). Even if the arbitrator consistently agrees with the arguments of one side and repeatedly finds in their favor, he is not, for this reason alone, shown to be biased. *See Bell Aerospace Co. Div. of Textron, Inc. v. Local 516, Int'l Union*, 500 F.2d 921, 923 (2d Cir. 1974).

Courts are likewise deferential to arbitrators in interpreting of section 10(a)(3) of the Federal Arbitration Act concerning refusal to hear evidence pertinent and material to the controversy or other misbehavior by which the rights of any party have been prejudiced. *See,*

*e.g., Cook Indus., Inc. v. C. Itoh & Co. (Am.) Inc.*, 449 F.2d 106 (2d Cir. 1971) (finding that where bias or partiality on the part of an arbitrator was detectable at the time of the hearing, plaintiff cannot remain silent and later object to the award of the arbitrators on that ground); *Transit Cas. Co. v. Trenwick Reinsurance Co.*, 659 F. Supp. 1346 (S.D.N.Y. 1987) (holding that an arbitration award should not be vacated where the arbitrator refused to receive a tardy letter once the hearings had begun, stating that, assuming *arguendo* that the neutral arbitrator was not justified in refusing the submission, the party challenging the award was not prejudiced inasmuch as both parties submitted comprehensive briefs covering all the relevant issues at the conclusion of the hearings); *In re Intercarbon Bermuda, Ltd. v. Caltex Trading & Transp. Corp.*, 146 F.R.D. 64 (S.D.N.Y. 1993) (finding that an arbitrator did not have to hear any oral evidence in an arbitration involving the interpretation of a contract, noting that the action of the arbitrator in refusing to hear testimony was analogous to that of a trial court in ruling upon a motion for summary judgment); *Eddie S.S. Co. v. Czarnikow-Rionda Co.*, 480 F. Supp. 731 (S.D.N.Y. 1979) (finding that an arbitration award need not be vacated because the arbitrator failed to ask for a ship's logs in determining dispatch credits under the charter of the ship, even though a ship's logs were perhaps the most important items of documentary evidence in any maritime controversy, because the plaintiff did not make a clear showing of prejudice).

On the rare occasion that an arbitration award is vacated, it is usually justified under section 10(a)(4), the provision for arbitrators who have exceeded or imperfectly executed their powers. Andrew M. Campbell, Annotation, *Construction and Application of § 10(a)(4) of Federal Arbitration Act (9 U.S.C.A. § 10(a)(4))*, 136 A.L.R. Fed. 183 (2005). Such a ruling almost always rests on a finding that an arbitrator awarded unauthorized remedies. *Id.* They

usually involve the reinstatement of employees who had engaged in misconduct despite the fact that the operative collective bargaining agreements involved in these cases had broad management rights clauses. *Id. See, e.g.*, *Mutual Redevelopment Houses, Inc. v. Local 32B-32J, Serv. Employees Int'l Union*, 700 F. Supp. 774 (S.D.N.Y. 1988); *Garlick Funeral Homes, Inc. v. Service Employees Int'l Union*, 413 F. Supp. 130 (S.D.N.Y. 1976).

### 2. Common law justification for *vacatur*

Manifest disregard for the law is a doctrine first suggested by the Supreme Court in *Silko v. Swain*, 346 U.S. 427, 436-37 (1953) and later reaffirmed in *First Options, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995). It is based on the premise that an arbitrator must apply governing law to each case. The Court of Appeals for the Second Circuit has taken a narrow approach to the application of the manifest disregard doctrine and considers it a doctrine of last resort for those rare situations in which there is an "egregious impropriety" on the part of the arbitrator that is somehow not covered by the FAA provisions described above. *Duferco*, 333 F.3d at 389.

A court's review of an arbitral award for manifest disregard of the law is "severely limited." *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 28 (2d Cir. 2000) (quoting *DiRussa*, 121 F.3d at 821). It involves a three-part inquiry: (1) whether the law that was supposedly ignored was clear and explicitly applicable to the situation; (2) whether the law was actually applied incorrectly, thus leading to an erroneous outcome; and (3) whether the arbitrator subjectively knew of the law and its application to the situation, and therefore must have consciously disregarded it. *Duferco*, 333 F.3d at 389-390. *See also Greenberg*, 220 F.3d at 28; *DiRussa*, 121 F.3d at 821. Mere legal errors or the arbitrators' failure to understand and apply the law will not rise to the level of "manifest disregard of the law." *See e.g., Hoeft v. MVL*

*Group, Inc.*, 343 F.3d 57, 69 (2d Cir.2003); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir. 1986). Thus, the manifest disregard of law doctrine is used to vacate an arbitration award "only in the most egregious instances of misapplication of legal principles." *Wallace*, 378 F.3d at 190.

A plaintiff seeking *vacatur* under the manifest disregard of law doctrine "bears the burden of proving that the arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it." *Duferco*, 333 F.3d at 389. This is not the same as alleging a manifest disregard *of evidence*, which is not a proper ground for vacating an arbitral award. *Wallace*, 378 F.3d at 193. Courts do not reassess the evidentiary record of an arbitration proceeding; they ascertain whether there is a colorable basis for the award. *Id.*

## IV. Application of Law to Facts

### A. Jurisdiction

The court has jurisdiction over plaintiff's hybrid section 301-fair representation claim against Brookdale and the union pursuant to the LMRA. It has the power to assert its supplemental jurisdiction over the claims against AAA and the arbitrator. These claims arise from the same common nucleus of facts as the claims against Brookdale and the union, namely the discovery of apparent document forgeries committed by plaintiff, her subsequent termination, and the arbitration proceedings used to resolve the issue.

### B. Statute of limitations

The motion to vacate filed on June 8, 2005 and the complaint filed on June 2, 2005 based on the hybrid section 301-fair representation claim are both timely. Since the arbitration award

18

was issued on January 30, 2005, even assuming plaintiff knew of the claimed error immediately, she had until July 30, 2005 to file the motions. The AAA and the arbitrator do not raise the issue of whether claims against them under the FAA and NY CPLR are time-barred.

## C. Hybrid section 301 - fair representation claim

### 1. An employer's breach of collective bargaining agreement

Brookdale argues that plaintiff's breach of contract claim is barred by the doctrine of preclusion. Plaintiff first filed a complaint against Brookdale on December 10, 2003. According to Brookdale, "[plaintiff's] claim that the Hospital breached its collective bargaining agreement with SEIU 1199 was raised before this very Court and amongst these very parties in the original Complaint in Nicolls I. The Court held that plaintiff had waived the ability to bring a breach of contract claim because she had sought relief pursuant to the New York State Labor Law § 740." Brookdale Mem. at 9 (citation omitted). What the court actually held was that:

> [t]o the extent that defendants' alleged breach of their contractual duties arise from the alleged retaliatory actions (termination), plaintiff has waived the right to bring suit pursuant to section 740(7). [This] cause of action is dismissed. Plaintiff may replead within thirty days to demonstrate that the claims do not arise from defendant's retaliatory actions.

*Nicholls v. The Brookdale Hosp. Med. Ctr.*, No. 03-CV-6233, 2004 WL1533831 (E.D.N.Y. July 9, 2004). The court decided that plaintiff's breach of contract claim had been waived pursuant to section 740(7), but allowed her to replead in order to save her claim for the purpose of *Nicolls I.* The court need not decide whether this decision was a binding final judgment based on the merits of the issue because plaintiff's hybrid section 301-fair representation claim fails on the fair representation part of the claim, discussed *infra*.

### 2. A union's breach of its duty of fair representation

19

The union had a duty of fair representation to the plaintiff as an employee and union member. The standard for finding a breach of that duty is high. Plaintiff makes no allegations of union conduct that qualifies as "arbitrary, discriminatory, or in bad faith," in order to meet that standard. *Mack v. Otis Elevator Company*, 326 F.3d 116, 129 (2d Cir. 2003) (internal citations omitted). Allegations that the union failed to prepare her case and call pertinent witnesses constitute claims of tactical error. Disagreement over which witnesses to call at an arbitration hearing do not constitute breach of the duty of fair representation. *See Baker v. R.H. Macy and Co., Inc.*, 519 F. Supp. 657 (E.D.N.Y. 1981). Although plaintiff is not specific about what she means by "failing to prepare the case," the Second Circuit Court of Appeals observed in *Barr* that many decisions of a union may, in hindsight, appear to have been in error once the plaintiff has lost the case, but these decisions do not rise to the level of breach of the duty of fair representation. *Barr v. United States Parcel Serv.*, 868 F.2d 36, 43 (2d Cir. 1989).

Plaintiff alleges that the union's failure to forward the arbitration award to her for more than thirty days supports a finding that the union breached its duty of fair representation. She alleges nothing that suggests that this conduct was arbitrary, discriminatory, or in bad faith. At most, her allegations could be considered negligence on the part of the union, although she has not established that the union was required or expected to forward the award to her within any specific length of time. More importantly, plaintiff does not allege that this conduct "seriously undermine[d]" the arbitral process or affected its outcome in any way. *Mack*, 326 F.3d at 129.

She contends that the union's denial of additional non-union counsel was in contravention of the collective bargaining agreement, supporting a finding that the union breached its duty of fair representation. In the sections of the collective bargaining agreements

that plaintiff submitted as Exhibits B and C to her motion to vacate, the court can find only one reference on which plaintiff may have been relying. The agreements state that step one of the grievance procedure is that "an Employee having a grievance and/or his/her Union delegate *or other representative* shall take it up with his/her immediate supervisor." Pl. Ex. B at 79; Pl. Ex. C at 88-89 (emphasis added). This section does not refer to the arbitration hearing specifically. The emphasized "or" leads to the conclusion that the collective bargaining agreement guarantees the employee only one representative, either the union delegate or another representative of the employee's choosing. A grievant has no right to a private attorney, or even to require a union to utilize any lawyer, at an arbitration. *Lettis v. U.S. Postal Serv.*, 39 F. Supp. 2d 181, 198 (E.D.N.Y. 1998). Considering that plaintiff has failed to show any other breach of fair representation by the union or her union delegate, her lack of additional non-union counsel did not "seriously undermine the arbitral process." *Mack*, 326 F.3d at 129.

Plaintiff fails to allege any theory upon which a reasonable trier of fact could find that the union breached its duty of fair representation, based upon the high standards needed to support finding such a breach. This claim fails, and with it the hybrid section 301-fair representation claim as a whole.

## D. *Vacatur* of an arbitration award

Although plaintiff's claim for damages against AAA was withdrawn and dismissed at oral argument, she still relies on it as a basis for *vacatur* of the arbitration award. Plaintiff asserts that AAA and the arbitrator violated the statutory provisions of section 10(a) of the Federal Arbitration Act, the federal 'common law' doctrine of manifest disregard for the law, and general public policy by (1) denying plaintiff the presence of additional outside counsel in the hearing

21

itself, (2) ignoring or misstating testimony, and (3) failing to preserve the record. She alleges

nothing that can be construed as "in bad faith or so gross as to amount to affirmative

misconduct" on the part of the arbitrator, the standard required for *vacatur* of an arbitration

award. *United Paperworkers*, 484 U.S. at 40. Instead, she relies on the conclusory allegation

that "[g]enerally the overall conduct of the arbitration seems suspect." Compl. at 8. Plaintiff

also does not identify any specific law which she believes the arbitrators disregarded in deciding

her claim, pursuant to the manifest disregard of law doctrine.

Plaintiff's claim is essentially that the arbitration award was made in manifest disregard

of evidence, which is not a sufficient basis for *vacatur*. Even if plaintiff could allege sufficient

facts to convince the court that her case was wrongly decided, the "motion to vacate filed in a

federal court is not an occasion for *de novo* review of an arbitral award." *Wallace*, 378 F.3d 182,

189 (2d Cir. 2004).

In reading the arbitration award, the court finds *at least* a "barely colorable justification"

for the outcome reached. *Id.* at 189-190. Plaintiff admits writing the doctor's name and

identification code in script handwriting inside the signature box. She accepts the examples of

this writing used as evidence in the arbitration proceeding. The central issue decided by the

arbitrator was whether plaintiff willfully intended to forge medical records, as Brookdale

contends, or whether she truly misunderstood the hospital policy, as plaintiff contends. In his

opinion, the arbitrator justified his decision by stating:

> Notwithstanding the Union's characterization of the grievant's actions, I do not
> arrive at the same conclusion. My review of the documents in question persuades
> me that the grievant was quite careful, in each and every instance, to write Dr.
> Epter's name on the signature line for the attending physician on the charts at
> issue. Had the grievant simply misplaced Dr. Epter's name on the chart, I am not

convinced that she would have so consistently placed his name on the signature line of each chart rather than in some instances placing the doctor's name on lines reserved for his printed name. Moreover, her use of script handwriting to write Dr. Epter's name is highly suggestive that the grievant was intent on making it appear that Dr. Epter signed the form himself. Lastly, the grievant's insertion of the doctor's provider number next to his name is in my opinion persuasive indication that the grievant intended to deceive and provide the false impression that Dr. Epter certified the treatment provided the affected patients. The grievant's explanation that somehow she learned that it was necessary for 'productivity and location' purposes to insert Dr. Epter's provider number did not ring true to me. I also do not credit the grievant's testimony that she held numerous consultations with Dr. Epter during the shift and that she left the disputed charts with Dr. Epter at the end of her shift. I can see no reason why Dr. Epter would not testify truthfully about what occurred on the date in question. There is simply no indication that Dr. Epter harbored any animus toward the grievant before the incident or that he possessed any reason to dissemble about his conduct that day. Simply put, I found Dr. Epter's testimony considerably more credible than that of the grievant.

Pl. Ex. D at 16-17. The fact that the arbitrator came to a different or even erroneous conclusion on issues of intent or credibility does not warrant the *vacatur* of the arbitration award under statutory or common law principles.

## E. Collateral estoppel

This court's decision in *Nicholls v. Brookdale University Hosp.*, No. 03-CV-6233, 2005 WL 1521239 (E.D.N.Y. June 22, 2005), rejecting plaintiff's challenge to her dismissal fully supports the arbitrator's decision. While the union, not the plaintiff, conducted the arbitration, the facts established in plaintiff's suit against the hospital support the arbitrator's decision. The court need not decide whether the plaintiff is collaterally estopped. It is enough in the instant case seeking *vacatur* of the arbitration award to find that the arbitrator's decision was supportable on the facts.

## V. Conclusion

23

The defendants' motions to dismiss are granted.  No costs or disbursements are awarded.

SO ORDERED.

_____
Jack B. Weinstein
Senior U.S.D.J.

Dated: July 14, 2005
       Brooklyn, New York